UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOHN C. CANNING, JR., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civ. No. 5-15-B-K |
| | ) |
| BROAN-NUTONE, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTIONS IN LIMINE**

In anticipation of the trial which is scheduled to commence in Portland, Maine on October 1, 2007, the parties have filed five (5) separate motions in limine seeking pretrial rulings on specific evidentiary issues. I now enter the following preliminary orders, based upon the current record. I also note that the parties have indicated to me James R. Dowell is anticipated to actually be in attendance and testify at the trial. If Dowell does appear for trial it will moot some of these rulings, but I am addressing in this order all of the motions which have been filed.

**Docket No. 86**
*Broan-Nutone's Motion* in Limine *to Exclude Any Evidence of Alleged Defect, Malfunction and Fan Disassembly*

This motion was anticipated at the time of the pretrial conference. Broan wants to make sure that the latest discovery that involved taking apart the motor does not come into evidence, at least as concerns any new observations or opinions that Canning's expert would wish to offer, such as that the fan appears to have "seized."

> Canning's fire "cause and origin" expert, Mr. Robert Long, describes the procedure of dismantling the fan for the purpose of looking for identifying marks on the fan motor. (Doc. No. 86-4.) Notably, in addition to reporting that no

> identifying marks or labels were found inside the motor housing, he describes some internal melting of a copper conductor and seized bearings within the motor shaft. In particular, he asserts that "copper wiring conductors outside the fan housing did not melt; an indication the greatest level of heat was concentrated within the steel fan assembly." (Id.)

Broan-Nutone says Long is not a qualified expert on electrical machines and is not designated to opine on product defect, only the origin of the fire. It cites deposition testimony (Doc. No. 86-2 at 21 & 146, 150-151, 159) in which Long admits that his opinions are limited to fire patterns external to the fan. Every bit as persuasive is the point that this belated discovery was condoned only with respect to the question of the fan motor's provenance. ( Judge Woodcock's statements at the hearing on the motion for summary judgment; Doc. No. 86-3 at 14).

In response, the Cannings assert that the motion is a tardy Daubert motion and therefore should be disregarded as untimely. (Response at 5, Doc. No. 91.) On the merits, the Cannings take issue with the expansive request to bar "all evidence" of defect, and cites this language from Judge Woodcock's summary judgment order:

> Mr. Long is a certified fire examiner, a former fire investigator for the Maine Fire Marshal's Office, and has been performing fire investigations for eighteen years. *Id.; Plaintiffs' Statement of Additional Material Facts* P 2 (Docket # 49) (PSAMF); *Defendant's Response to Plaintiffs' Statement of Additional Material Facts* P 2 (Docket # 56) (DRPSAMF). Mr. Long concluded that the fan was responsible for the fire. PSAMF P 6; DRPSAMF P 6. In reaching this conclusion, Mr. Long found that under normal operating conditions, an exhaust fan would not generate heat sufficient to start a fire, absent a defect. PSAMF P 9; *Pls.' Opp'n* at 9. Mr. Long also eliminated other potential causes of the fire. He excluded owner misuse, saying "[t]he location of the appliance's installation essentially eliminates the possibility of owner misuse." PSAMF P 15. He further excluded the possibility that another appliance caused the fire, as there were no other appliances at the point of origin. PSAMF P 14. In his report, under "Origin and Cause," Mr. Long wrote:
>
>> The fire damage and fire patterns consistently indicate that the fire originated in the second-floor bathroom wall bay where the exhaust fan had been mounted. The Nutone fan was the only appliance at the point of origin.

2

> Thermal patterns on the rear of the fan housing indicate that much higher than normal temperatures had occurred at that location. The cause of the fire is directly related to an event involving the fan.
>
> *Confidential Origin and Cause Report* at 3-4, Ex. 1 (Docket # 56). Finally, Mr. Long suggested that the heat source originated from inside the fan rather than outside the fan. PSAMF P 12; *Long Dep.* at 124: 7-17 ("[T]here's been an exceptional amount of thermal exposure at that point, probably from internal. . . . [I]t appears that it was more . . . likely than not an internal exposure versus an external exposure.")

Canning v. Broan-Nutone, LLC, 480 F. Supp. 2d 392, 394-95 (D. Me. 2007) (footnote omitted). The Cannings also argue that the new examination comes in because it is factual in nature and just supports Long's earlier conclusions and concede that Long cannot otherwise testify about specific defects inside the fan. (Response at 6.)

In my view the new facts about internal melting of a copper conductor and seized bearings, etc. is out of bounds because it was "discovered" well beyond the discovery deadline. Long could have taken the fan apart and made these observations during the discovery phase of the case. Defendant then would have had an opportunity to conduct its own discovery vis-à-vis melted copper conductors and seized bearings. If these facts are indeed corroboration of Long's earlier opinion, he should have sought that corroboration long ago. The fan was only opened because I allowed the plaintiffs' request on the narrow issue of the fan's provenance and for no other reason.

Based upon the earlier orders in this case, Long could say that he opened the fan and could not find any identifying markings, though I don't see how that will move any issue in the case forward. As for Long's cause and origin opinion, anything that was available in the summary judgment record is certainly fair game. The motion in limine is granted to the extent set forth above.

**Docket No. 87**
*Broan-Nutone's Motion* In Limine *for Ruling on Admissibility of James R. Dowell Declaration*

James Dowell is a former A.O. Smith engineer. Because he has recently retired and lives in Ohio, he could possibly not show up for trial. Broan-Nutone wants an order permitting it to introduce in evidence Mr. Dowell's hearsay declaration about the difference between the casing and the motor. It would offer the declaration under FRE 807. It complains that otherwise the Cannings will "take advantage of some confusion that arose during [deposition] questioning, namely, whether Mr. Dowell's identification of the motor . . . establishing that it was manufactured by A.O. Smith for Broan as a replacement." (Doc. No. 87 at 1.) The problem as Broan sees it is that the pictures Dowell was looking at depicted the casing only. Broan is concerned that it cannot compel Mr. Dowell to attend the trial and will need to rely on the declaration if Mr. Dowell does not come. Broan's motion runs through the Federal Evidence Rule 807 factors.

The Cannings object on the hearsay ground, observing that Rule 807 is to be used only rarely. (Response at 2.) They say the points made in the declaration are not even material because they just seek to perpetuate an ambiguity rather than nail down any fact. (Id. at 2-3.) They also cite authority to the effect that a declaration is not particularly trustworthy just because it is signed under oath; there must be additional indicia of trustworthiness. (Id. at 3.) In addition, they say the declaration came well after the testimony, after Dowell passed up an opportunity to clarify his testimony in an errata sheet, was procured by Broan in the summary judgment context, and was procured in a context that has foreclosed any cross-examination. These circumstances call its

trustworthiness into doubt, they feel.  Finally, the Cannings feel that Broan should have requested a trial deposition, which would have been more trustworthy than the summary judgment declaration that Broan's counsel probably authored.

I agree with the Cannings that Broan has not established that the declaration is inherently trustworthy.  Also, in my view the interests of justice are not so compelling in this case because Broan is saying it's not its motor even though it is encased in the proper casing and was installed in this specific fan.  See, e.g., Polansky v. CAN Insurance Co., 852 F.2d 626, 631 (1st Cir. 1988) (addressing former Rule 803(24), which has been transferred to Rule 807).  Rule 807 provides as follows:

> Rule 807.  Residual Exception
>
> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

If Broan has some reasoned basis for believing the motor was not intended for this particular fan, presumably Broan's own representatives could have articulated that basis. If Broan wants to make the point that Dowell was only looking at pictures of the casing, it can do that without admitting Dowell's declaration, the pictures presumably speak for themselves.  If Dowell appears and is subject to cross-examination, he can clarify his deposition however he deems appropriate.   This motion is limine is denied.

**Docket No. 88**
*Broan's Motion* in Limine *to Exclude*
*Certain Evidence from First Responders*

With this one Broan wants to exclude any evidence or reference to (1) suppositions made by Augusta Fire Department personnel to the effect that the fan maybe had something to do with the fire and (2) the fact that a fireman was injured responding to the fire.  In response, the Cannings want to make sure that they can call the fire department folks who came to the scene for their version of what they observed, including "the state of the house" and "descriptions of which portions of the house were most badly burned."  (Response at 1.)

The motion seems appropriate and the response seems appropriate too.  Suppositions about cause and origin should be precluded as they would amount to undisclosed expert opinion and opinion lacking any indicia of helpfulness, as there is no apparent underlying methodology to back it up.  Evidently, someone from the department had suggested to Long that the fan may have had something to do with the fire.  As for the injury to the fireman, it is potentially prejudicial and has no relevancy to this particular products liability claim.  Otherwise, I don't see why the fire department folks can't testify about the fire in general though it might be a waste of the Court's time and the jury's time.  This motion is granted to the extent set forth above.

**Docket No. 89**
*Cannings' Second Motion* in Limine

The Cannings filed one earlier in limine motion having to do with fan provenance (Doc. No. 72), which I denied (Doc. No. 85).  This new one concerns "computer-generated exhibits" including still pictures and animations.  The Cannings want an order

6

precluding such things other than those authenticated at the depositions of Mary Elizabeth and John Canning.  Apparently Broan's expert, John Olsen, expressed an inkling to make some more of these things at his September 16, 2005, deposition, and the Cannings want it to be limited to the ones that they have already seen and agreed are accurate.  They argue that if these exhibits exist, it is too late for them to be used because they have not been disclosed and we are now on the eve of trial.  Broan says in its response (Doc. No. 92) that they need to meet September 24 to exchange exhibits, so why not wait and see if there is any real issue.

The second issue the Cannings raise concerns whether or not exhibits 2-7 from Mr. Dowell's deposition are sufficiently authenticated for admission.  They would like a ruling in advance and they say the exhibits are good because they were produced in response to their document request and Dowell identified them as documents kept by A.O. Smith in the course of its regularly conducted business activity.  Broan does not address this matter in its response.

To the extent the motion seeks admissibility of the documents previously identified by Dowell at this deposition, it is granted, in that they are sufficiently *authenticated* for admission.  (If there is some other objection on some other ground, I will address it as it arises.)  As to the other portion of this motion, I am unaware of any issue arising in connection with computer generated exhibits and will assume there is none.  If there remains some problem, the parties should bring the exhibits or illustrative aids to jury selection on Monday, October 1st, allow me to view them, and I will make a ruling then.

**Docket No. 107**
*Cannings' Motion to Resolve Outstanding Issues*
*As to Editing Deposition of A.O. Smith (James Dowell)*

This motion brings us back to the Dowell deposition transcript, which the Cannings intend to use at trial if Dowell does not testify, or possibly to impeach his trial testimony if he testifies differently than at his deposition.  They informed Broan of the passages they plan to use mid-September and have filed a designation with the Court (Doc. No. 96.)  Broan has objected to certain passages of the transcript.  (Doc. No. 96-4.)  The transcript is included in the docket at entry 96.   I don't find any of the objections particularly compelling and I overrule them and direct that plaintiffs' counsel prepare a carefully edited transcript that includes both the Cannings' designations, any objections that the parties seek to preserve, and the counter-designation of the defendant in the event the deposition is used in lieu of live testimony.

*So Ordered.*

September 27, 2007                              /s/ Margaret J. Kravchuk
                                                U.S. Magistrate Judge